

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-26-2008

# Suharyadi v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4254

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Suharyadi v. Atty Gen USA" (2008). *2008 Decisions*. Paper 1385.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1385

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 06-4254

———

GATOT SUHARYADI,

Petitioner,

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

———

On Petition for Review of the Board of Immigration Appeals
(BIA File No. A96-203-474)

———

Submitted Under Third Circuit LAR 34.1(a)
February 25, 2008

Before: McKEE, AMBRO, *Circuit Judges*, and IRENAS,* *Senior District Judge*.

(Filed: March 26, 2008)

———

OPINION

———

_____

 * Honorable Joseph E. Irenas, Senior United States District Judge for the District of
New Jersey, sitting by designation.

IRENAS, *Senior United States District Judge*.

Petitioner, Gatot Suharyadi, seeks review of the decision of the Board of

Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") decision that

Petitioner was ineligible for asylum, withholding of removal, and relief under the

Convention Against Torture ("CAT"). For the following reasons, the Petition will be

denied.

I.

Petitioner, a thirty-seven year old male, is a native and citizen of Indonesia. On

January 31, 2000, Petitioner was admitted to the United States on a B-2 visitor visa,

which permitted him to stay in the country for no more than six months. Without

obtaining additional authorization from the United States government, Petitioner

remained in the United States beyond July 30, 2000. On April 16, 2003, the Department

of Homeland Security issued a Notice to Appear, charging him with removability under 8

U.S.C. § 1227(a)(1)(B). At the master calendar hearing on October 22, 2003, Petitioner

admitted the factual allegations in the Notice to Appear, thus conceding he was

removable, and requested asylum, withholding of removal, and relief under the CAT.[1]

At a subsequent merits hearing on these claims, Petitioner testified that he was

originally from Kediri, a small village in Indonesia. Petitioner was born and raised as a

---

[1]Petitioner declined to designate a country of removal at the master calendar hearing.

2

Muslim, and later converted to Christianity in 1990, in order to marry his wife, a Chinese Christian.[2] Petitioner's wife is originally from Jakarta, and after attending university, Petitioner lived "sometimes in Kediri, sometimes in Jakarta." After he married his wife in 1999, Petitioner and his wife lived primarily in Jakarta, where his wife's family still resides. Petitioner only attended church in Jakarta and did not attend church in his home village of Kediri.

Petitioner testified that he initially came to the United States because of tensions between Muslims and Christians in Indonesia. In addition to the overall religious tensions in Indonesia, Petitioner's family did not approve of his conversion and ultimately evicted him (presumably from living with them) because he married a Christian. Petitioner testified that he also wanted to come to the United States because many of his wife's friends were living peacefully here.

When asked what was the "worst thing that happened in Indonesia," Petitioner testified that he and his wife were the target of violence in 1998. Petitioner and his wife (his then girlfriend) were on a motorcycle driving through the market when they approached a group of individuals finishing their Friday prayers. A member of this group told Petitioner to pull over; Petitioner pulled over, but did not fully stop the motorcycle. A group member then hit Petitioner, who fell to the ground from the bike, and the entire group then proceeded to beat Petitioner for approximately five minutes. The attackers did

---

[2]Petitioner met his wife in 1986.

not rob Petitioner, but Petitioner sustained bruises from the incident. Petitioner's wife remained unharmed.

Petitioner testified that he does not want to return to Indonesia because he fears that he will not be able to live peaceably because of his conversion to Christianity. With the exception of the motorcycle incident and his family's disapproval of his conversion and marriage, Petitioner did not testify as to any other specific physical attacks or incidents of adverse treatment. Petitioner believes that, if they return to Indonesia, he and his wife would be safer living in Jakarta, as the people there are more tolerant and accepting than in Kediri. Petitioner testified that his application for asylum was untimely because he did not know what asylum was when he first arrived in the United States.

The IJ issued an oral decision and order on August 29, 2005, denying Petitioner's request for asylum, withholding of removal, and relief under the CAT, and ordering Petitioner's removal to Indonesia. The BIA adopted and affirmed the IJ's decision on August 31, 2006. This Petition for Review followed.

II.

This Court has jurisdiction to review the BIA's final removal order pursuant to 8 U.S.C. § 1252(a). The BIA's one paragraph opinion affirms and adopts the IJ's oral decision. Therefore, we review the BIA's opinion, and also the IJ's decision to the extent

4

it was relied upon by the BIA. *See Voci v. Gonzales*, 409 F.3d 607, 612 (3d Cir. 2005) (citing several cases demonstrating this Court's recognition that "in some instances, we review both the decisions of the IJ and the BIA").

Factual determinations about past persecution or fear of future persecution, as well as credibility determinations, are reviewed under the substantial evidence standard. *Chen v. Gonzales*, 434 F.3d 212, 216 (3d Cir. 2005). Thus, factual findings must be upheld "'unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Id.* (quoting 8 U.S.C. § 1252(b)(4)(B)). Denials of CAT relief are also subject to substantial evidence review. *Zubeda v. Ashcroft*, 333 F.3d 463, 471 (3d Cir. 2003).

III.

We note at the onset that our review is limited to Petitioner's claims for withholding of removal and relief under CAT. As to Petitioner's request for asylum, the BIA determined that Petitioner did not file his asylum application within the one-year limitations period set forth in 8 U.S.C. § 1158 (a)(2)(B) and that Petitioner did not establish changed circumstances that materially affected his asylum application or extraordinary circumstances related to the failure to meet the filing deadline. We are therefore without jurisdiction to review Petitioner's request for asylum. *See* 8 U.S.C. § 1158 (a)(2)(D) ("[n]o court shall have the jurisdiction to review any determination of the

5

Attorney General" regarding the timeliness of an asylum application or the existence of changed circumstances); *Tarrawally v. Ashcroft*, 338 F.3d 180, 185 (3d Cir. 2003).[3]

## A.

Withholding of removal is available under 8 U.S.C. § 1231(b)(3)(A) "if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." A finding of past persecution gives rise to a rebuttable presumption that the "applicant's life or freedom would be threatened in the future in the country of removal on the basis of the original claim." 8 C.F.R. § 208.16(b)(1)(I); *see also Jarbough v. Attorney General*, 483 F.3d 184, 190 (3d Cir. 2007). In the alternative, "[i]f the applicant's fear of future threat to life or freedom is unrelated to the past persecution, the applicant bears the burden of establishing that it is more likely than not that he or she would suffer such harm." 8 C.F.R § 208.16(b)(1)(iii).

While the IJ found the testimony of Petitioner to be credible, the IJ held that the actions taken against Petitioner individually or cumulatively were not sufficient to trigger

---

[3]Petitioner has not made any arguments regarding constitutional questions or issues of law that could permit us to retain jurisdiction on the asylum claim. *See Sukwanputra v. Gonzales*, 434 F.3d 627, 635 (3d Cir. 2006) ("[D]espite the changes of the REAL ID Act, 8 U.S.C. § 1158(a)(3) continues to divest the court of appeals of jurisdiction to review a decision regarding whether an alien established changed or extraordinary circumstances that would excuse his untimely filing.").

a finding of past persecution. "Persecution" is "'extreme conduct'" such as "'threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom.'" *Lie v. Ashcroft,* 396 F.3d 530, 534, 536 (3d Cir. 2005) (quoting *Fatin v. INS*, 12 F.3d 1233, 1240 (3d Cir. 1993)). Petitioner argues that the incident in the market provides evidence of past persecution. While we recognize that the market attack was harmful to Petitioner, we do not believe that this single incident is sufficiently severe to give rise to a finding of past persecution.[4] *See Lie*, 396 F.3d at 536 (holding that, in the context of an asylum petition made by Chinese Christians from Indonesia, "two isolated criminal acts, perpetrated by unknown assailants, which resulted only in the theft of some personal property and a minor injury, is not sufficiently severe to be considered persecution"). Further, we do not believe the conduct by Petitioner's family falls within the definition of persecution, as their actions did not threaten Petitioner's life or freedom.

Because Petitioner has failed to establish past persecution, he must show that it is more likely than not that he would be subject to future persecution in order to qualify for withholding. *See Toure v. Attorney General*, 443 F.3d 310, 317 (3d Cir. 2006) (quoting *INS v. Stevic*, 467 U.S. 407, 424 (1984)). As set forth in the 2002-2004 Country Reports published by the Department of State for Indonesia ("Country Reports"), Petitioner

---

[4]The IJ also questioned whether the market incident was even motivated by ethnic hostilities.

references a history of racial and religious tensions as evidence of the likelihood that Petitioner will be subject to future persecution due to his race, religion or membership in a particular social group.[5] This Circuit has previously held that there is not "a pattern or practice of persecution of Chinese Christians in Indonesia," particularly as the violence toward Chinese "seems to have been primarily wrought by fellow citizens and not the result of governmental action or acquiescence." *Lie*, 396 F.3d at 537. Based on his review of the more recent Country Reports and the Third Circuit's prior position regarding persecution of Chinese Christians from *Lie*, the IJ found that there was no evidence that Petitioner would be singled out for persecution in the future.[6] Further, Petitioner's own testimony indicated that he would be more comfortable and safer living in Jakarta, as he believes the people there are more tolerant and accepting of interfaith marriages. As substantial evidence supports the IJ's holding that Petitioner would not be subject to persecution if he returned to Indonesia, Petitioner is not eligible for withholding of deportation.

---

[5] Petitioner designated race, religion, and membership in a particular social group as the bases for relief in his asylum application. The IJ noted that the race basis presumably derived from his wife, but that it was unclear as to why Petitioner marked membership in a particular social group, hypothesizing it was based in Petitioner's membership in an interfaith marriage.

[6] The IJ recognized that the Court in *Lie* did not have the opportunity to review the 2004 Country Report on Indonesia, but noted that there was nothing in the updated report to suggest that the Third Circuit would take a different position. The IJ's analysis in this case contrasts with the *Sukwanputra* IJ, who did not "specifically address[] whether a pattern or practice of persecution existed in Indonesia." 434 F.3d at 637.

B.

Article 3 of the CAT, to which the United States became a signatory in 1999, states that "[n]o State Party shall expel, return ('refouler') or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture." A petitioner must prove that "it is more likely than not that [he or] she will be tortured by the government or with its acquiescence upon removal to a particular country." *Chen*, 434 F.3d at 216; *see also* 8 C.F.R. § 208.16 (c)(2). The alien has the burden of supporting his claim through credible testimony. *Ghebrehiwot v. Attorney General*, 467 F.3d 344, 352 (3d Cir. 2006). Torture is defined as "'an extreme form of cruel and inhuman treatment,' but not 'lesser forms of cruel, inhuman or degrading treatment.'" *Chen*, 434 F.3d at 216 (citing 8 C.F.R. § 208.18(c)(3)(i)).

The IJ found nothing in the record to support Petitioner's claim that he would be subject to torture by the Indonesian government or its agents if he returned to Indonesia. Further, as Petitioner has failed to present evidence that he would be subject to future persecution, much less torture, were he to return to Indonesia, substantial evidence exists to support the IJ's decision that Petitioner is ineligible for relief under the CAT.

IV.

Accordingly, the Petition for withholding of removal and protection under the

CAT will be denied.